UNITED STATES, Appellee

v

NATHAN R. HALL, Airman Second Class, U. S. Air Force, Appellant

12 USCMA 374, 30 CMR 374

No. 14,680

Decided April 28, 1961

*Major Quincey W. Tucker, Jr.,* argued the cause for Appellant, Accused. With him on the brief was *Colonel James L. Kilgore.*

*Lieutenant Colonel Simpson M. Woolf* argued the cause for Appellee, United States. With him on the brief were *Colonel Merlin W. Baker* and *Major John C. Wiley.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of larceny and housebreaking, in violation of Articles 121 and 130, Uniform Code of Military Justice, respectively, 10 USC §§ 921, 930. The specification of the latter offense alleges that the accused unlawfully entered "a railroad box car" of the British Railways with intent to commit larceny therein. On this appeal, the accused contends the specification does not allege an offense in violation of Article 130 because a railroad boxcar is not

374

a "structure" as that word is used in the article.

In United States v Taylor, 12 USCMA 44, 30 CMR 44, the Court held that a large cargo-carrying aircraft was not a structure within the meaning of Article 130. In its opinion, the Court contrasted the aircraft with a railway car, and pointed out that Congress did not intend the two to be "members of the same class." Implicit in the discussion is the conclusion that a railroad freight car is, as the Manual for Courts-Martial indicates, a "structure" within Article 130. Manual for Courts-Martial, United States, 1951, paragraph 209, page 375. The specification is, therefore, legally sufficient. Accordingly, the decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

When, as in this case, a railroad boxcar is used for the storage of goods, it constitutes a "structure" within the meaning of Uniform Code of Military Justice, Article 130, 10 USC § 930, and may be the subject of the offense of housebreaking. United States v Taylor, 12 USCMA 44, 30 CMR 44. I am, therefore, able to agree with the affirmance of the decision of the board of review.

If, however, the majority intend by their general language to establish the principle that *any* railway car may be the subject of breaking and entering, I must respectfully dissent. The statute in question punishes the entry, with intent to commit a criminal offense, of any "building or structure of another." Code, supra, Article 130. A "structure" is defined as any artificial combination of parts built up or composed in some definite manner. Black's Law Dictionary, 4th ed, page 1592. It is, therefore, obvious that some limitation must be placed upon its meaning in the statute involved. Otherwise, housebreaking might be held to have occurred through entry of a hand into a cash register or insertion of a tool into a slot machine. We have previously indicated some of the boundaries of its definition.

In United States v Gillin, 8 USCMA 669, 25 CMR 173, we refused to permit a motor vehicle to be made the subject of the related offense of unlawful entry. Nevertheless, there can be no doubt that it, generically speaking, is a "structure." In United States v Taylor, supra, we also held that a C-123 aircraft, designed to function as a troop and cargo carrier, was not a "structure" in the sense of Code, supra, Article 130. In that case, we also spoke of railway boxcars in the following manner:

"True it is that the C-123 or other large aircraft may be used as a freight or passenger carrier, and to that extent it is similar to a railroad car. *The latter, however, is commonly used for storage to obviate unloading and reloading, or for want of warehouse space. Likewise railroad cars are often used as living quarters for work crews maintaining the roadbed and in other instances. To the contrary, it would seem that by its very nature the plane, like the automobile, is ordinarily used simply as a conveyance, and it would be quite unusual that it be utilized for storage or habitation.*" [United States v Taylor, supra, at page 46.] [Emphasis supplied.]

The principle deducible from the foregoing is simply that, in order to be the subject of housebreaking, a "structure" must be one "in the nature of a building or dwelling." Manual for Courts-Martial, United States, 1951, paragraph 209. In order to fall within that limitation, it is obvious that a railroad car must be performing the function of storage or be utilized as a living space when the breaking and entering occurs. Gibbs v State, 8 Ga App 107, 68 SE 742 (1910). If it is merely being used for the carriage of goods, it would clearly seem to be classed with the automobile involved in United States v Gillin, supra, and the cargo and troop-carrying aircraft mentioned in United States v Taylor, supra.

Recourse to analogous civilian authorities reinforces my belief that this is

the correct construction of Code, supra, Article 130. Thus, the general rule has been stated to be that the breaking and entering of a railroad car with the appropriate criminal intent does not constitute either the offense of burglary or housebreaking unless the applicable statute expressly so extends the crime. 12 CJS, Burglary, § 24, citing Territory v Stokes, 2 NM 161 (1881). And, as noted in United States v Gillin, supra, at page 671, Congress thought it needful specifically to include railroad cars in the enactment proscribing the offense of housebreaking in the District of Columbia. District of Columbia Code, Title 22, § 22–1801 (1951 ed). It also found it necessary to enact a special code section to cover entry of sealed boxcars moving in interstate commerce. 18 USC § 2117. In short, as pointed out in Chaney v State, 225 Ala 5, 142 So 104 (1932), the word "structure," when used in an enactment defining statutory burglary or housebreaking must, under the doctrine of *ejusdem generis*, have the same characteristics as the places specifically named in the statute. In Code, supra, Article 130, "structure" is used only in connection with the word "building . . . of another." In this connection, it is noteworthy that research has not disclosed a single instance in which housebreaking or a similar charge has been predicated upon a criminal entry into a railway car as such, unless the pertinent statute expressly provided for the protection of that type of property. Indeed, in Gibbs v State, supra, at page 742, it was carefully noted that the car there involved was "withdrawn from service as such and . . . used exclusively for the purposes of habitation." Cf. Manual, supra, paragraph 209. Accordingly, I would limit violations of Code, supra, Article 130, to those cases in which railroad cars and similar vehicles have been diverted from their normal role as a means of transportation and devoted to use as a place of storage or habitation.

As the car involved in this case was being used to store the property which it contained, it falls well within the principles which I deem applicable to the mentioned statute. Accordingly, I concur in the affirmance of the decision of the board of review.