## UNITED STATES

v.

**Airman Alanson P. CANSDALE, FR 566–98–8352 22d Security Police Squadron Fifteenth Air Force (SAC).**

### ACM S24352.

U. S. Air Force Court of Military Review.

Sentence Adjudged 31 Oct. 1975.

Decided 1 July 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

Before ROBERTS, Senior Judge, and HERMAN, ORSER and SANDERS, JJ.

## DECISION

ORSER, Judge:

Tried by special court-martial, with members, the accused was convicted, contrary to his pleas, of one specification each of dereliction of duty, making a false official statement, larceny, and disorderly in station, in violation of Articles 92, 107, 121, and 134, 10 U.S.C. §§ 892, 907, 921, 934, respectively, Uniform Code of Military Justice. The approved sentence provides for a bad conduct discharge, forfeiture of $229.00 per month for five months, confinement at hard labor for five months, and reduction to airman basic.

On appeal, appellate defense counsel call attention to several assertions of error submitted by the accused and independently assign three more. In our opinion, only one of the errors assigned by appellate defense counsel and one other perceived in our own

scrutiny of the record, warrant consideration. All others are either without merit or were thoroughly considered by the staff judge advocate in his review and properly resolved adversely to the accused.

■ We first address a contention that the evidence fails to establish the dereliction of duty offense (Charge I and the specification). We agree.

The challenged charge alleges that on the date specified the accused was derelict in the performance of his duties "in that he willfully failed to remain outside a no lone zone while posted as a close-in sentry." This offense arose out of the circumstances surrounding the larceny charge. The record shows that while posted as a sentry guarding a B–52 aircraft, the accused, a security policeman, stole a number of tools from a tool box secured in the near proximity of the aircraft. In addition to the larceny offense, the Government found it appropriate to also charge the accused with being derelict in the performance of his sentry duties.

The dereliction offense stems from a Strategic Air Command (SAC) policy regarding nuclear weapons and component protection. An important facet of this policy is what is termed the "two-man concept," which basically means that an individual may not approach nuclear weapons unless accompanied by another. Implementation of this policy with respect to nuclear-armed SAC B–52 aircraft includes what is referred to in the record as a "no lone zone," the boundaries of which are denoted by a six inch wide red line painted in a circle around the aircraft.

During the trial it was established that the tools stolen were located well within the restricted area surrounding the aircraft the accused was guarding. The Government presented no eyewitness testimony that the accused entered the red boundaried geography. Instead, the trial counsel relied exclusively on his compelling proof that the accused stole the tools to demonstrate circumstantially that in so doing he likewise violated the SAC nuclear policy and was, in the negative manner alleged, derelict in the performance of his duties.

Though not explicated in such terms at trial, trial counsel's theory of the accused's guilt of dereliction on the basis of his possession of the stolen tools is closely analogous to the occasionally invoked principle that the mere possession of recently stolen property permits the inference that the person in possession is guilty of an unlawful entry in connection therewith. *United States v. Hall*, 30 C.M.R. 836 (A.F.B.R.1960), affirmed, 12 U.S.C.M.A. 374, 30 C.M.R. 374 (1961); *United States v. Bennett*, 36 C.M.R. 840 (A.F.B.R.1965), pet. denied, 36 C.M.R. 541 (1966); *United States v. Daley*, 35 C.M.R. 718 (A.F.B.R.1964); *United States v. Young*, 31 C.M.R. 561 (A.F.B.R.1961). Assuming that in theory the burglary/housebreaking inference may be applicable to a dereliction of duty offense in the manner here alleged, in our judgment, the proof otherwise offered by the Government totally negates its evidentiary value. Though the trial counsel argued, and the military judge even instructed, to the effect that entry by the accused into the so called "no lone zone" *per se* constitutes dereliction of duty, in point of fact the evidence shows that is just not the case. In that regard, the evidence demonstrates it is a violation of the SAC policy only when an individual, though otherwise authorized, enters into the red circled area by himself. Stated conversely, the SAC two-man policy is technically complied with when an authorized individual enters the restricted zone in the company of another authorized individual.

As applied to these circumstances, the inference previously discussed would serve to establish only that the accused entered the "no lone zone." It would not serve as a substitute for proof that he entered the area alone which, as shown, is the actual conduct proscribed by the SAC policy. In our evaluation of the circumstances we cannot rule out as in altogether unreasonable hypothesis that the accused may have entered the restricted zone in the company of a confederate; or that he was legitimately within the zone in the company of another authorized individual at the time he decided

to steal the tools. In short, the evidence presented by the Government fails to exclude the possibility that other authorized persons accompanied the accused into the area where the stolen property was located.

As the evidence of record fails to show the probability that the larceny was accomplished by means of a prohibited entry into the restricted area, it is insufficient to support the dereliction of duty charge. Accordingly, the accused's conviction of that offense must be set aside. See *United States v. Daley,* supra.

■ The other issue we consider is whether the convening authority was disqualified from acting on the record because he testified at trial. Having carefully considered the matter, we are satisfied that under the circumstances of this case he was not.

On the basis of authority to search and seize granted by the base commander, the tools which were the subject of the larceny charge were found in a vehicle possessed by the accused. The commander was also the special court-martial convening authority.

During an Article 39(a), Code, supra, session at trial, the defense counsel indicated he planned to object to the admission of the tools on grounds that the search was not based on probable cause. In order to sustain the burden of proof on the issue, the trial counsel called as a witness the security police investigator who telephonically obtained the authority and conducted the search. The investigator testified at length concerning the facts he imparted to the base commander which caused the latter to verbally grant authorization to search and seize. The substance of the testimony was that an informant, who was fully identified to the commander as an individual who had previously provided reliable information in at least two other cases, had related that during the preceding evening the accused told him he had stolen tools from the primary alert area on base and had further indicated they were located in his vehicle.

At the conclusion of the investigator's testimony, the defense called the base commander as a witness. In his testimony, the commander fully verified the investigator's recitation of what he had told him over the telephone. Concerning the informant's reliability, the commander admitted he was not aware the man had been removed from the human reliability program for suspected marihuana use or that he had received an administrative discharge.

No further witnesses or other evidence was presented by either side on the search issue. In our opinion, the evidence presented by the Government provided sufficient probable cause to warrant the search. The commander's testimony was completely consistent with that of the Government's witness. As a result, there was no evidence before the court to refute, rebut or in any way contradict the testimony of the investigator concerning the briefing he gave the base commander. On the evidence presented, the military judge had no factual dispute to resolve, only a legal issue of whether the information presented to the commander established probable cause, which the judge determined in favor of the Government.

■ In *United States v. Choice,* 23 U.S.C. M.A. 329, 49 C.M.R. 663 (1975), and again in *United States v. Ward,* 23 U.S.C.M.A. 388, 50 C.M.R. 164, 1 M.J. 18 (1975), the United States Court of Military Appeals made it clear that the mere fact a convening authority testifies as a witness does not automatically vitiate his required impartiality and disqualify him from reviewing the record. He is disqualified only if put "in the position of weighing his testimony against or in light of other evidence which conflicts with or modifies his own." *United States v. Choice,* supra, at page 665. Thus, if his testimony "is of an official or disinterested nature only, he may properly review the record." *United States v. McClenney,* 5 U.S.C.M.A. 507, 18 C.M.R. 131 (1955).

In our own recent case of *United States v. Wilson,* 1 M.J. 694 (A.F.C.M.R.1975), in circumstances quite similar to those at hand, the issue was whether the convening authority was disqualified from acting on the record merely because he had personally found

probable cause and issued a search and seizure warrant as a result of which contraband drugs were found on the accused and admitted in evidence at trial. In *Wilson*, unlike the case before us, the convening authority did not personally testify at trial. However, an SF Form 1176, Authority to Search and Seize, which he had signed was admitted in evidence. He was, thus, a witness for the prosecution in the sense of paragraph 63, Manual for Courts-Martial, 1969 (Rev.), which provides:

> [A] witness includes not only one who testifies in court but anyone whose declaration is received as evidence for any purpose, including written declarations made by affidavit or otherwise.

In *Wilson*, as here, there was no evidence before the court rebutting, or in any way contradicting the testimony of the investigator concerning his briefing of the base commander. The convening authority was thus not put in a position of having to weigh his own testimony against contradictory or conflicting evidence, or to judge his own credibility as a witness. Speaking for the Court, Judge Sanders stated that under the circumstances the convening authority's interest in the case was at all times official rather than personal and he therefore did not lose his impartial role. We concluded that his strictly judicial act of authorizing the search and seizure prior to any charges being preferred did not transform his official position to a disqualifying status of having a personal interest in the outcome of the litigation.

Implicit in our reasoning in *Wilson*, supra, is that the mere fact a convening authority testifies in person concerning his pre-preferral act of authorizing a search does not disqualify him from acting on the record. Regardless of whether his signed search authorization is placed before the court, or he personally appears in the courtroom, he is in either case a witness. The crucial question is the same in each case: Is he thereafter called upon to judge his own credibility in the face of contradictory or conflicting evidence? *United States v. Choice*, supra.

As can be readily seen from the recited circumstances, here, as in *Wilson*, supra, the convening authority was not put in that position. He was thus not disqualified from reviewing and taking action on the record.

For the reasons earlier stated, the finding of guilty of Charge I and the specification thereunder is incorrect in law and fact and is set aside. The remaining findings of guilty are correct in law and fact and affirmed. Reassessing the sentence in light of this action, we affirm only so much thereof as provides for a bad conduct discharge, forfeiture of $200.00 per month for four months, confinement at hard labor for four months and reduction to the grade of airman basic.

HERMAN and SANDERS, Judges, concur.

ROBERTS, Senior Judge, absent.