UNITED STATES, Appellant

v

DANIEL J. GILLIN, Specialist Third Class, U. S. Army, Appellee

8 USCMA 669, 25 CMR 173

No. 10,491

Decided February 7, 1958

First Lieutenant Paul R. Walsh argued the cause for Appellant, United States. With him on the brief were Lieutenant Colonel John G. Lee and First Lieutenant Chester F. Relyea.

First Lieutenant Neil Flanagin argued the cause for Appellee, Accused. With him on the brief were Colonel J. M. Pitzer and Major Frank C. Stetson.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The Acting The Judge Advocate General of the Army has presented to us a certificate of review to determine whether a specification charging that the accused did "unlawfully enter the private automobile of Private Ernest D. Metcalfe" states an offense.

The accused was tried and convicted upon his plea of guilty of wrongfully damaging private property and of unlawfully entering a private automobile,

in violation of Articles 109 and 134, Uniform Code of Military Justice, 10 USC §§ 909 and 934, respectively. He was sentenced accordingly. The board of review affirmed the finding of guilty of the Article 109 violation but disapproved and ordered dismissed the finding of guilty of unlawful entry and consequently reduced the sentence. They said:

"But, while we believe that an automobile in such a case may be the subject of unlawful entry, that is not what the pleading under consideration alleges. The specification here contains nothing, either directly or by necessary implication, to suggest that the automobile of Private Metcalfe was in any way secured against entry—i. e., locked or closed. We are therefore of the opinion that such specification fails to allege any offense; and the findings of guilty thereon must be set aside."

With this rationale we do not agree. In the first place, we cannot find any legitimate basis for distinguishing between a locked or unlocked car as it is our understanding that breaking is not required for the crime of unlawful entry. United States v Love, 4 USCMA 260, 15 CMR 260. But more fundamental is our rejection of the board's premise that an automobile can be the object of the crime herein charged.

In United States v Love, supra, this Court discussed the theory of unlawful entry. In that case, the accused was found in an unlighted tent, occupied by members of a military company not his own, clutching an armful of clothing. There was evidence that he had been drinking. He was charged with housebreaking but convicted of unlawful entry. In affirming the conviction of the accused, Judge Brosman, writing for a unanimous Court, wedded these two crimes as greater and lesser when the facts permit. There he stated:

". . . Although the Manual for Courts-Martial, United States, 1951, in its chapter devoted to the Code's punitive articles, contains no specific discussion of the elements of the latter offense, as such, its paragraph

dealing with the crime of housebreaking necessarily includes a treatment of unlawful entry. There the following language is used: 'Examples of such structures are a stateroom, hold or other compartment of a vessel, an inhabitable trailer, an inclosed goods truck or freight car, a *tent,* and a houseboat.' Manual, supra, paragraph 209. (Emphasis supplied.)

"It is undeniable too that an 'entry' was effected by the accused in the case at bar—for the uncontroverted evidence shows that, when he was discovered by Corporal Bucsher, he was wholly inside the tent, and in a crouching position on its floor. Manual, supra, paragraphs 208, 209. No 'breaking,' of course, is required to make out either housebreaking—despite its title—or unlawful entry, in violation of Article 134. Manual, supra, paragraph 209."

Finally in that instance, after discussing the element of unlawfulness, he concluded that a tent, when used as a dwelling place for troops, could be the subject of unlawful entry. As a tent was specifically stated in the Manual as being within the meaning of the word structure, which is a logical conclusion, we were not there confronted with a difficult question of statutory construction.

But here we must step into that quagmire of the law, for we must ascertain whether an automobile can, by implication or otherwise, be considered as a structure, building, place, or property which can be the object of the crime of unlawful entry. Although that offense is not defined in the Code or discussed in the Manual, there is a form specification in the Appendix of the latter which reads:

"In that...... did, (at) (on board) ......, on or about ...... 19.., unlawfully enter the (dwelling house) (garage) (warehouse) (tent) (vegetable garden) (orchard) (stateroom) (......) of ......." [Manual for Courts-Martial, United States, 1951, Appendix 6c, Specification 174.]

Article 130 of the Code defines housebreaking as follows:

"Any person subject to this chapter who unlawfully enters the building or structure of another with intent to commit a criminal offense therein is guilty of housebreaking and shall be punished as a court-martial may direct."

The Manual enumerates certain property which falls in the categories of buildings and structures, for in paragraph 209 it goes on to say:

"The word 'building' includes a room, shop, store, office, or apartment in a building. As used in this article, the word 'structure' refers only to those structures which are in the nature of a building or dwelling. Examples of such structures are a stateroom, hold or other compartment of a vessel, an inhabitable trailer, an inclosed goods truck or freight car, a tent, and a houseboat. It is not necessary that the building or structure be in use at the time of the entry. As to what constitutes an entry, see 208 (Burglary)."

The model specification on housebreaking follows the Manual definitions, and it is quoted for purposes of comparison:

"In that ...... did, (at) (on board) ......, on or about ...... 19 .., unlawfully enter the (dwelling) (room) (bank) (store) (warehouse) (shop) (tent) (stateroom) (......) of ......, with intent to commit a criminal offense, to wit: ......, therein." [Manual for Courts-Martial, United States, 1951, Appendix 6c, Specification 104.]

One of the obvious differences between these offenses is that housebreaking is a specific intent crime while that element is missing from unlawful entry. Ostensively, the buildings, structures, and places mentioned in the former bear similarity to those stated in the latter in that all provisions and forms seem to protect real property and areas used for storage or habitation. Yet a careful analysis reveals that, although unlawful entry can occur any place in which housebreaking could be committed, the converse cannot be said to be true. By way of example, it is difficult, albeit impossible, to conceive of a housebreaking conviction being predicated upon a breaking into an unfenced vegetable garden. The vistas of unlawful entry, therefore, as contemplated by the framers of the Manual, encompass more than the more serious crime of housebreaking but, even by the most liberal interpretation, they cannot be extended to property of every sort.

It is of particular interest to note that, in spite of the care with which the property subject to housebreaking or unlawful entry is enumerated in the Code and the Manual, not once is an automobile mentioned. Habitable trailers and other types of personal property which house and transport individuals are mentioned, but strangely absent is the family car. It would, therefore, appear that Congress and the framers of the Manual deliberately excepted automobiles, a matter which we hereafter more fully explore.

Perhaps the best source for determining the intent of Congress is the enactments proscribing the crimes in the District of Columbia. Congress there has legislated upon both housebreaking and unlawful entry. The housebreaking statute, District of Columbia Code, Title 22, § 22–1801 (1951 ed), explicitly enumerates the property which is protected. Mentioned is a dwelling, bank, store, warehouse, shop, stable, apartment, room, steamboat, canal boat, vessel, other watercraft, railroad car, lumber yard, coal yard or any other yard where goods are kept for storage in trade.

Turning to the unlawful entry statute, District of Columbia Code, Title 22, § 22–3102 (1951 ed), as amended, Supplement V, 1956, it reads as follows:

"Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority

**671**

to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, . . ."

In the House floor debate, the coverage of the amended statute was explained:

"By broadening the coverage of the section to property other than dwellings and buildings, it is felt that the need for creating the offense of trespass on open areas, such as yards, gardens, and automobile parking lots, is met." [98 Cong Rec 2062 (1952).]

It is clear from this discussion that one of the terms of enlargement of the unlawful entry statute, namely, other property, which was inserted in the previous statute was limited to property of a similar class. Accordingly, as late as 1952, Congress specifically gave consideration to the types of property to be protected and, while the debate mentioned automobile parking lots, motor vehicles were unmentioned. Thus, the Congressional intent to circumscribe the offense to certain types of property, as evidenced by the District of Columbia laws, is reasonably clear and it is a helpful guide to us in ascertaining the lawmakers' intent when they considered the military offenses of housebreaking and unlawful entry. No doubt the drafters of the Manual were following generally the District of Columbia Code, and it seems highly improbable that Congress and those individuals interpreting the Code would inadvertently overlook property in such common usage as an automobile. It seems much more probable that it was a calculated and intentional determination to limit the property protected by the law governing unlawful entry to real property or to such form of personal property as is usually used for storage or habitation. To extend the coverage to personal property not within the mentioned classes would be judicial legislation and beyond the powers conferred upon us by Congress.

For the foregoing reasons, we conclude that a specification alleging unlawful entry of an automobile under Article 134 does not state an offense. We are well aware of the contention that, under present conditions, many service personnel use their automobile as a place for temporary safekeeping of their property. Unfortunately, because of the lack of accommodations and the semipublic nature of barrack living, this aspect of the use of motor vehicles is becoming more common. However, the military is not without a proper remedy. If any article is taken, larceny may be charged, and if the automobile is damaged, an Article 109 violation may be alleged.

Therefore, we answer the certified question in the negative and affirm the decision of the board of review.

Judge FERGUSON concurs in the result.

QUINN, Chief Judge (concurring in the result):

I disagree with the dictum in the principal opinion that, under the present wording of the Uniform Code, there can be an unlawful entry into property other than a "building or structure." Article 130, Uniform Code of Military Justice, 10 USC § 930; United States v Love, 4 USCMA 260, 15 CMR 260. I concur in the result.